UNION DE TRABAJADORES DE LA INDUSTRIA ELECTRICA Y RIEGO UTIER et al. Puerto Rico Electric Power Authority PREPA et al. Appeal No. 20-2041 ATTORNEY MENDEZ PLEASE INTRODUCE YOURSELF FOR THE RECORD AND PROCEED WITH YOUR ARGUMENT Good morning, your honors. This is Jessica Mendez Holberg on behalf of the appellants. May it please the court. In the court below, a police requested an administrative expense priority under Section 503B1A of the Bankruptcy Code, while appellants opposed, arguing that this was improper because there is no estate in the Title III proceedings under PROMESA. In Gracia Gracia back in 2019, this court already acknowledged that the concept of estate has no role in PROMESA. This leads to the inevitable conclusion that if there is no estate, there can be no necessary costs and expenses of preserving the estate. That was precisely the issue addressed by the Bankruptcy Court for the Southern District of New York, in the case New York City Off-Track Betting Court. The ruling in Off-Track Betting is consistent with the constitutional underpinnings that strongly caution against the court intruding upon Chapter 9, or here, Title III debtors' operations. I'm sorry, counsel. I did not understand. You do have raised a U.S. Constitution objection in the Title III court. I thought what we had here was a question of statutory interpretation and congressional intent. Your opponent has responded that you would like to simply ignore the argument that 42 U.S.C. section 2161C5 defines for Title III purposes, the property of the estate means the property of the debtor. They then go on to explain how the entire structure of the Act goes on to support that explicit textual reading. Rather than rhetoric about constitutional objections, could you please turn to a textual argument about Title III and why, in your view, we should disregard something Congress plainly put into the statute? Yes, Your Honor. I would like to clarify in terms of the constitutional issue. No, please. I have asked you to direct your argument in a given place, and if you want, at the end of that, to engage in rhetoric, you can. But right now, I have asked you to address the text of Title III. Yes, Your Honor. It is correct that Section 301C5 of PROMESA, as does Section 901 in the Bankruptcy Code for Chapter 9, instructs to substitute property of the estate with property of the debtor. But in this case, we are talking about Section 503B1 that does not use the terminology property of the estate, but estate. And if Congress had intended to extend that interpretation to the single word estate, it would have done so in the plain language of the statute. Excuse me. Why is it not perfectly obvious? Why does Congress need to fill a gap when the statute makes it perfectly obvious? Because it has provided the definition that property of the estate means the property of the debtor. Yes, Your Honor, because the term estate encompasses far more than just property itself, since it consists of all the legal or equitable interest of the debtor in property. And courts have repeatedly stated that Section 503 must be narrowly construed in order to keep the fees and administrative expenses at a minimum as to effectuate basic policy of preserving the estate for the benefit of the creditors. Here, it has been interpreted that in Chapter 9, and it stands as well to Title III proceedings, that there is no estate. So what at least are requesting or proposing is that we just simply switch the word estate for debtor as it is exactly the same. But that distorts the purpose of Section 503 and the interpretation that courts have given to granting administrative expenses in it for it to be narrowly construed and the focus on preserving the estate for the benefit of all creditors. If the court sides with the appellee's proposition that it's just a matter of changing the word estate for the word debtor or property of the debtor, then what would be the standard for granting the administrative expenses under Section 503B1A? It would be the benefit of the debtor and that's where the off-track betting court was specifically analyzing the effects of granting the administrative expenses in a Chapter 9 case. Counsel, again, I may have misunderstood your briefing, but I thought that the basic structure of your argument was no Title III Congress did not incorporate in Section 503. I believe you just made an argument that if Congress did incorporate 503, then there are no standards set forth anywhere in Title III for evaluating what are appropriate administrative expenses. If so, I believe that is a new argument, so before you go on, I understand you have a later argument that the court erred in application of the well-known standards, but let's stop you and see if you are making a new argument to us not made to the Title III court. No, Your Honor, we're not making a new argument. We are basing our argument on what was decided by the court in the off-track betting decision where the same situation happened where there was a request for administrative expenses under Section 503B1A, and the court decided that since there was no estate in a Chapter 9, as there is no estate in Title III, then there could be no administrative expenses granted for operating expenses. It could only be the proper reading of Section 503 would be for administrative expenses related to the case itself, and there the court even evaluated the fact that if there was consent from the debtor or not. And this is important because the same sections that were incorporated into Chapter 9 are the same sections that are incorporated into PROMESA. Let me ask you about that because as I understand your argument, your argument is that the provision that says that the property of the estate means in PROMESA the property of the debtor. I understand you to be saying, well, that's all fine and good, but that's different than saying the estate is the debtor. It doesn't say the estate is the debtor. So I understand that as your argument. There you say there is no estate in a PROMESA proceeding just as there is not in a municipal bankruptcy proceeding. But then I look at PROMESA as a whole and I find I think over 20 incorporated provisions in PROMESA that use the word estate. So I have to come up with some sensible reading of that word that's used 20 times in PROMESA, and I can't think of any other meaning that it could possibly have other than debtor, although maybe in a couple of contexts that might be problematic. I don't see where it would here. So how do you suggest we should interpret those numerous references in PROMESA to the estate? Yes, Your Honor, most of those sections that were actually referenced by the athletes in their briefs mentioned the word estate, but they also mentioned debtor, debtor or estate. Therefore, there is no problem with those particular sections. But there are others that don't, that just refer to estate. Yes, and obviously those sections would not be applicable in the Chapter 9 or the Title III proceedings. But why would Congress have put them in? They're in the statute that's applicable in this case. The word estate appears. Well, Your Honor, in terms of those sections that would be directly inapplicable because they're not consistent with the proceedings of a Title III, I couldn't have a straight answer for those sections. But particularly for Section 503B1A, which is the issue in this case, we have the benefit of other courts that have interpreted that. Just before you leave the statute, though, tell me where I'm wrong here. PROMESA specifically incorporates 507A2, and it incorporates no other provision of 507, I believe. 507A2 grants priority status to administrative expenses under 503B, which only concerns the estate. So how do we avoid rendering 507A2 completely feckless if we adopt your position? Well, Your Honor, in terms of the specific language of Section 503B1A, when it refers only to estate, and this Court has already noticed that there is no estate in PROMESA. The proper reading would be to then grant the administrative expenses, but for those expenses that are related to the bankruptcy case itself, as treaties have pointed out with respect to this specific section. But you see the tension here is you're reading along the statute and you come to the word estate, and then you see it 20 or so times, and as you correctly point out, it could be the usual use of the word estate because we don't have one here. But then the next step is not to say, I therefore ignore it. I don't ignore what Congress wrote. The next step is to say, well, what could Congress have meant in this context when they used the word estate? And again, I don't hear you suggesting that there's any more likely candidate than the debtor. Well, Your Honor, the problem with substituting the word estate with debtor and then entering into a decision of granting the administrative expenses, it would be then that the Court would need to analyze if this is beneficial for the debtor or not. And in that sense, that would lead the Court into interfering with the debtor's policy determinations into the request for administrative expenses. For example, in this case, the debtor has expressly said that executing this contract is a policy of the government and that we as appellants are questioning policy decisions of the government. Now, the government consents to bring these requests to the Court for granting the administrative expenses. Then the Court needs to decide if this is beneficial for the debtor, then the Court is in a position of second-guessing the debtor with the policy decisions of executing this contract and granting these expenses. Let me stop you there and see if I understand that logic. I think you're saying that if we said estate means debtor, then when the Court is called upon to decide whether to allow certain anticipated or actual expenses of the debtor to be treated as administrative expenses, it would be interfering with the debtor. And yet, you want us to adopt a position, a priori, that the answer to that question is always they are not administrative expenses, which would seem to be a global interference with the debtor. I'm not sure how you turn Congress' solicitude for the interests of the debtor into a categorical rule that it's never administrative expenses. Well, let's remember that since there is no estate in Title III, the debtor is open to manage its property and sell its property, enter into contracts, so there's no restriction for the debtor there. What we submit to the Court is that, as in Chapter 9, PROMESA also establishes restrictions to the Court with respect to the interference with the debtor's governmental and policy decisions. Counsel, I'm having similar problems with the argument that we believe you're making as outlined by Judge Cayatta. You seem to be wanting a per se rule that no administrative expenses can be allowed, but at the same time, you are arguing that some can be allowed if it is shown to have been for the benefit of the debtor. To me, that's not entirely consistent, but let's move on for the benefit of the debtor. When courts review those determinations, it's usually for an abuse of discretion at the court of appeals level. Here, what's involved is allowance of administrative expenses for the next year, which would allow for a test period for the takeover of the badly, disastrously functioning power system. In this case, the Court of Appeals in Puerto Rico saddled with more debt than it could happen. What is your argument that this is not beneficial to the debtor? Or, more precisely, that the Title III Court abused its discretion in concluding that there was some benefit to the debtor? Your Honor, the argument that was submitted was that the District Court gave total deference to the Government Party's submissions with respect to the contract in terms of the potential benefits. It wasn't something that was proved to the Court that there were actual benefits, but the potential benefits of this front-end transition services, which, to begin with, are services that LUMA Energy will perform for itself in order to be prepared for taking over the electric system in Puerto Rico. Counsel, I'm sorry. I didn't understand it to be that way. This is a test period as part of the transition to new management and new managers of the power system. That would provide an immediate benefit. You seem to be focusing on not the immediate benefit, but an assertion that there won't be any long-term benefit. Have I understood you correctly? Your Honor, what is cited in the opinion of the District Court and also in our briefs of the specific services that constitute the front-end transition services in a specific period of time in which LUMA is to prepare for taking over the operations and all the services that they are performing are not rendering any economic benefit to the debtor. Considering the actual requirement of granting these administrative expenses and all the transition services that they are doing, assessing potential problems with the system, remediation plans, possible remediation plans, interviewing or hiring employees, are things that are for the benefit of LUMA only for it to be prepared to take over, not rendering any economic benefit to the debtor while the debtor has to pay for LUMA to perform all the services. And all the benefits that were portrayed to the District Court that these transition services will bring to the debtor were speculative, were future benefits when LUMA is able to take over the operations. But with respect to the specific front-end transition services, there is no actual benefit. Accepting your argument, what is the case law that says a court cannot authorize administrative costs to have priority if they go to future benefits? Do you have any cases that support that? Yes, Your Honor. There are a couple of cases that establish that potential or speculative benefits are not sufficient. Yes, for example, and obviously in the context of Chapter 11, Fort Motor Credit v. Dubbings 35 Federal 3rd 860. Also, we have Drexel Burgum Lambert Group from Southern District of New York, that's 134 BR 482, that states that the estate must have actually benefited as opposed to potentially benefited from these expenses. And is that a Chapter 9 case? No, those are... The second one. That's a Chapter 11 because as we stated in our briefs, since there is no estate in Chapter 9, there could be no administrative expenses for actual or necessary costs to benefit the estate. Okay. All right. Thank you. Thank you, Ms. Mendez. Any follow-up from the court additionally? I had one quick question on your argument that Section 106 would be in violation of the non-delegation document if it precluded review of a certification ruling by the... I did not see that raised below. Am I missing? Is there something you would point me to in terms of whether you squarely raised that before Judge Swain? Yes, Your Honor. Appellees stated in their briefs that it was not raised below, and the reason why it wasn't raised below is because it's an argument that comes as a consequence of the district court's determination. When the district courts decide that there is no... that the argument doesn't... that we cannot make that argument because Section 106E of PROMESA precludes the court from reviewing the certification process of the fiscal plan, then it's when we have the opportunity to raise the argument before this court that if there is no judicial review, then it violates the... Are you saying the board didn't raise that argument below? The board didn't raise 106? I believe they raised the argument of the... there's no judicial review with Section 106, but our argument was that... So you knew that argument was in play and did not respond to it by saying that if so construed, 106 would be unconstitutional? Because our argument in response was that we were not questioning the certification process of the fiscal plan itself. Therefore, there was no need to determine that there was no judicial review pursuant to Section 106E. When the district court decides that there is no judicial review because the argument falls into what the district court understood as a challenge to the certification of the fiscal plan, then it's when we raise the argument. We did not because, in our view, the issue wasn't right. My answer was that we didn't raise that argument at the district court because there was no need to raise the argument before the board at the time. Your friend... I see. The question of whether you waived it only goes to the issue of whether you needed to raise it. That's your view. All right, I understand. Thank you, counsel. Thank you. If you would mute your audio and video, we'll hear from Mr. Bienenstock. Mr. Bienenstock. Good morning. My name is Martin Bienenstock of the law firm Proskauer Rose, LLP. We represent this morning the Financial Oversight and Management Board for Puerto Rico as the Title III representative of PREPA, the electric utility. In respect of the discussion on the applicability of administrative expenses in operating situations in Title III, I just have the following points to add to the points in our brief. One, when counsel was asked earlier what's the difference between the estate and the property, counsel said, well, the estate includes all the legal and equitable interests. The legal and equitable interest in property is the property. That's the estate. There is no difference between property of the estate and estate. For the same reason, when the statute refers to estate in 503, it's referring to the property of the estate, even if it's not referring to the debtor, which may have other rights that are granted by Title III that you would not consider property, such as the right to formulate a plan or things of that sort that can't be sold, etc. Second, the counsel for the appellant argued that it would distort the purpose of Section 503 to apply it to Title III, but this court in Mammoth Mart and Hemingway already said the purpose is to let debtors get credit for the provision of goods and services. That's exactly what's happening here. Now, in respect of the court's comments, it appears that the entire text of PROMISA evidences Congress' intent to let a Title III debtor give administrative expense priorities in order to do what it's supposed to do. In Title III, I would say that that comment is further corroborated by a subsection of PROMISA Section 301, 48 U.S.C. 2161, that hasn't been discussed previously. That's 301F. 301F says, a section made applicable in a case under this title by subsection A that is operative if the business of the debtor is authorized to be operated is operative in a case under this title. 503B1A in Chapter 11 cases is operative in Chapter 11 cases where the debtor's business is authorized to be operated. Here, PREPA is obviously authorized to be operated. Congress went out of its way in PROMISA, as it did in Chapter 9, to say when you have a debtor that operates something, anything brought into the chapter or the title by Section 301A is applicable to PREPA's Title III case. That would include squarely 503B1A. On the benefit analysis, appellants argue that the preparations benefited LUMA and not PREPA. The preparations, though, included, as are shown at Joint Appendix page 46, that LUMA created things like remediation plans for PREPA. That is of immediate benefit. Additionally, while the legal decision whether to grant administrative priority for something that benefits from the estate is an issue of law subject to the trial court's discretion, the factual decision of what is a benefit is, as a matter of fact, subject to the clearly erroneous standard. There's absolutely nothing. Appellants have never even tried to say that the trial court's finding of benefit as a fact, not admin priority, was clearly erroneous, and for very good reason. They can't possibly do that because all of what LUMA was doing was to put itself in a position that PREPA asked it to put itself in, to get ready to take over management of the electric utility. Let's look at it from the opposite end. If LUMA had not undertaken the roughly $120-$130 million expense to make all of the preparations that PREPA requested it to do, there would be no one out there in the private sector who could take over the operation and improve things for the people of Puerto Rico. It was clearly a benefit to PREPA to have someone undertake this massive expense in order to put themselves in a position to be able to create the improvement that is being created. As your honors know from the various pleadings, LUMA's contract more than encourages that LUMA will employ PREPA employees to the maximum extent possible. This is not about employees. This is about improving what has been a dismal system, regrettably, for many decades. Council mentioned citation 35F3-860. I don't recall that from the debtors' briefing, but I have looked it up. It's the Ford Motor Credit Company case v. Dobbins in the Fourth Circuit. What was at issue there was the creditor asked for post-petition interest as an administrative priority expense. This has absolutely nothing to do, as far as I could tell on a very quick reading, to the case at hand here. On New York City off-track betting, Judge Swain demonstrated why it's certainly not the opposite here, starting with the proposition that in that case, the creditor was asking for an administrative expense priority. In this case, the oversight board, in tandem with FAF, who you will hear from next, was making the request. The sovereignty concerns and telling a government what to do with its property is not an issue here. It was an issue in New York City off-track betting. Judge Swain also mentioned that that court never even mentioned the fact that property of the estate was defined to be property of the debtor for purposes of Chapter 9, the same as occurs in Title III. In addition to that, the court never mentioned Bankruptcy Code Section 901C, which is identical to Promesa Section 301F that I quoted earlier, showing that anything that Congress incorporated into Title III for an operating Chapter 11 debtor applies in Title III. It stands to reason that Congress was particularly concerned with making sure that operating debtors like PREPA could do the necessary, attract the necessary credit. Getting someone else to front $130 million is no easy thing. To AFAF and the board's credit, they found a collection of highly credentialed entities with long track records in other parts of the United States to come in here and get themselves ready to make the improvements that we're hoping will be made. In Gracia v. Gracia, I know Appellant argues that the First Circuit showed in that case that anything to do with the estate doesn't apply here, but that's not what the First Circuit said. What the First Circuit said was, quote, The First Circuit and some of your others were on that panel. That holding has nothing to do with the use of the word estate in the matter at bar. Basically, Appellant put in no evidence whatsoever. The oversight board and AFAF put in the declaration of Mr. Omar Morero, a very senior official. He explained chapter and verse all of the myriad benefits that the front-end transition period would provide to PREPA, and the court accepted it. There was no effort by Appellants to put in contrary evidence. He made the legal argument that getting ready to take over as a matter of law is not a benefit. I think I've explained why that just doesn't hold up. If it did hold up, there could be no one eligible to take over who wouldn't spend $130 million for free, and that's just not real world. Your Honors, unless the court has additional questions, those were the only remarks I had prepared. Thank you. Questions? No. All right, Mr. Benestock, thank you. We'll hear from Mr. Friedman. Good morning, Your Honor. It's Peter Friedman from Melvin and Myers on behalf of the Puerto Rico Fiscal Agency and Financial Advisory Authority, which is known as AFAF. I want to make a very fine point on what Mr. Benestock says on joint appendix page 46. Omar Marrero, who is the head of AFAF, specifically noted that the benefits were not speculative under this agreement. In fact, the benefits would take place even before assumption of the full O&M services PREPA expects to realize significant benefits from the front-end transition services. So there was nothing speculative. There were then, subsequent to that, two paragraphs that lay out in detail specific benefits, which Judge Swain was entitled to rely on in rendering her decision. Your Honors, I wanted to just make two other points very quickly. Judge Kayada, we believe it's very important that the Court not address the non-delegation doctrine issue. That issue and the issue of fiscal plans was waived below. It gets into some very complicated and thorny issues as between the Oversight Board and the elected government that we believe are not necessary to resolve this issue and certainly shouldn't be addressed in this context. This Court has already seen some of those issues addressed in the past. Issues related to the Oversight Board's relationship with AFAF and the meanings of fiscal plans will be addressed in the future. We think the disputes between those two parties are the appropriate place to address them, not on an issue of the allowability of an administrative expense claim. The last point I wanted to just raise is that we believe the OTB case and the Norton's Treatise, which are cited in Appellant's brief, are incorrectly decided to the extent that they have a categorical statement that administrative expense claims can't be granted because of some constitutional or non-interference provisions. The sections that the Treatise and the Court rely on are non-interference provisions, but in the case of Section 305 of PROMESA, they are expressly waivable with the Oversight Board's consent. With respect to Section 303, that's a power for the government to wield, not a private party. What you have in this case that you did not have in either the OTB situation or expressly in the provision of the Norton's Treatise that the appellants rely on is this dual consent where you have AFAF exercising the power of the elected governments under 303 and does not believe that granting of any kind of administrative claim would interfere with the powers of the elected government to control its subsidiary entity over PROMESA. You have PREPA and you obviously have the Board here consenting as it's permitted to do expressly under 305 of PROMESA to court interference as it were with the revenues or property of the debtor. Judge Lynch, I believe you correctly identified the substantial negative history of PREPA. The government believes that this is an important step. That's why it was a party to a contract that expressly provided for administrative expense claim to the extent that AFAF and the debtors could meet their evidentiary burden to do so. We did that below and appellants have set forth no reason why that decision should be reversed. Unless the court has any questions on the points I've raised, I'm happy to yield any time I have back left to the court. Seeing none, thank you, counsel. Thank you all. That concludes argument in this case. Attorney Mendez, Attorney Bienenstock, and Attorney Friedman, you should disconnect from the hearing at this time.